UNITED STATES of America, Plaintiff,

v.

**67.59 ACRES OF LAND, MORE OR LESS, IN HUNTINGDON COUNTY, COMMONWEALTH OF PENNSYLVANIA, et al., Defendants.**

Civ. No. 75–692.

United States District Court,
M. D. Pennsylvania.

April 26, 1976.

S. John Cottone, U. S. Atty., M. D. Pa., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for U. S.

John R. Miller, Jr., Miller, Kistler, Campbell, Mitinger & Beik, Bellefonte, Pa., for defendant.

## MEMORANDUM

HERMAN, District Judge.

Presently before the court in this case is a motion filed by the United States seeking to strike the defenses set forth in defendant Morningstar's amended answer as insufficient pursuant to Federal Rule of Civil Procedure 12(f). The motion filed by the United States will be granted for the reasons which follow.

This case arises as the result of condemnation proceedings instituted by the Secretary of the Army for the construction of a flood control reservoir, known as the Raystown Lake Project, on the Juniata River, Huntingdon County, Pennsylvania. In connection with this flood control project the United States has filed a complaint in condemnation and declaration of taking condemning various properties, including Tract 1711 owned by defendant Morningstar. Defendant, in his amended answer, contends, *inter alia*, that the acquisition of Tract 1711 in its entirety is not an authorized taking under the pertinent acts of Congress; that the proposed condemnation is excessive for.the express public uses within the power of eminent domain by the United States and constitutes an arbitrary and discriminatory abuse of power by the Secretary of the Army; that additional proposed public uses offered in support of the taking are illegal and not properly within the exercise of the power of eminent domain; and further that the enabling statute is unconstitutional in that it vests arbitrary discretion and is an illegal congressional delegation of authority to the Secretary of the Army. The United States in turn has filed a motion to strike these asserted defenses as insufficient.

Defendant Morningstar specifically contends that the authorization for this particular flood control project provided by Congress in the Act of October 23, 1962, P.L. 87–874, 87th Congress, 76 Stat. 1173, and based on the information supplied in House Document No. 565, 87th Congress, 2nd Session 1962, did not encompass the present scope of the project, and particularly the 67.59 acres in Tract 1711 sought to be acquired by the Secretary of the Army, and that as a result the plans for the project together with the alterations and changes should be re-submitted to Congress for its approval. Defendant maintains that the present intent of the Secretary of the Army to acquire 29,300 acres is not in conformity with the specified 15,715 acres set forth in House Document No. 565. Defendant further contends that House Document No. 565

recommends the acquisition of all properties a distance of 500 feet horizontally from the water's edge at the present 786 foot recreational level or those properties between the 786 foot and 820 foot level, whichever is greater, and that the property in question is more than 7/10ths of a mile from the nearest water's edge and at a 1300 foot elevation, which is clearly beyond the scope of the project as recommended. For these reasons defendant Morningstar submits that the project has undergone material changes and is subject to further approval of the Congress in its altered form.

■■■ While the power of eminent domain is an inherent attribute of sovereignty as limited by the just compensation clause of the fifth amendment, the exercise of this power is governed by express legislative authorization within well-defined congressional policies which necessarily must be strictly construed. Accordingly, before the power can be exercised by any officer of the government it must plainly appear that the power has been duly delegated and that the officer is properly authorized. *United States v. 64.88 Acres of Land, etc.,* 144 F.Supp. 29 (W.D.Pa.1956), *rev'd on other grounds,* 244 F.2d 534 (3d Cir. 1957). In the present case it is the court's conclusion that the Secretary of the Army has been delegated statutory authority for the acquisition of land by condemnation where necessary for the success of congressionally-approved projects, and that the present flood control project falls within the purview of this general grant of authority.

■■■ In resolving a similar claim arising out of the same Raystown Lake Project and involving neighboring Tracts 1843 and 1844, the court, in *United States v. 187.40 Acres of Land, etc.,* 381 F.Supp. 54 (M.D.Pa.1974), clearly established the requisite statutory authorization for the taking of lands necessary for the establishment of a flood control project. In that case the landowners contended, *inter alia,* that the plans and reports of the Corps of Engineers submitted to Congress in an attempt to secure congressional approval, and including House Document No. 565, did not schedule the

landowners' land among that to be taken, and that as a consequence the authority granted for the taking of land for the purpose of accomplishing the flood control desired did not include the landowners' land. Judge Nealon, speaking for the court in that case, cited the general authority granted by Congress to the Secretary of the Army by Act of April 24, 1888, 25 Stat. 94, 33 U.S.C. § 591, enabling him to acquire lands by condemnation where deemed necessary in the informed discretion of the Secretary for the success of future projects provided for by Congress. This authorization is further applied to flood control projects in general by Act of Congress, March 1, 1917, 39 Stat. 950, 33 U.S.C. § 701. Furthermore, by Act of Congress of June 28, 1938, 52 Stat. 1215, 33 U.S.C. § 701c–1, the Secretary of the Army is granted express broad authority to acquire all land necessary for any dam or reservoir project for flood control, notwithstanding any restriction or limitation provided by any other act. Clearly these statutes grant to the Secretary such authority to acquire any land as is deemed necessary within the Secretary's discretion for the effectuation of any project, and together with Act of Congress, August 1, 1888, 25 Stat. 357, 40 U.S. C.A. § 257, make it clear that the need for the taking of additional land following the approval and commencement of a project does not require new legislative authority. *United States v. 187.40 Acres of Land, etc., supra,* at 56.

House Document No. 565 was utilized by the Corps of Engineers and considered by Congress only as an aid in the determination of whether or not to authorize the Raystown Lake Project. Once the project had in fact been approved, the House Document was not binding on the Secretary of the Army by its terms and the Secretary may make changes considered absolutely necessary to implement the congressional decision for such project. *Id.* at 56–57. The congressional directive accompanying the approval and authorization of the project was merely that the construction of the flood control project should be "sub-

stantially in accordance" with House Document 565. The particular change in question; to wit, the increase in acreage from 15,715 acres to 29,300 acres under the proposed acquisition schedule, was the result of a detailed study and plans for the project prepared pursuant to an appropriation of funds by Act of Congress, December 31, 1963, P.L. 88–257. Subsequently, during the hearings on public works appropriations for 1968, a House of Representatives subcommittee considered the proposed Raystown Lake Project with the 29,300 acres recommended to be acquired (See Ex. 1 of the government's motion to strike). Thereafter, funds for the actual construction of the flood control project reservoir were appropriated by Act of Congress, August 25, 1972, P.L. 92–405, 92nd Congress. For these reasons the court believes that the plans as altered by the Secretary of the Army were sufficiently authorized by Congress.

■ Defendant Morningstar further contends that if the court finds that authority does exist for the taking of his property, then, in any event, such authorization constitutes an illegal delegation of discretion and authority by the Congress to the Secretary of the Army in his administrative capacity. The court does not agree. The court will not consider broadside allegations that the purported public use is merely a pretense to explain arbitrary official conduct absent specific allegations of egregious bad faith. *United States v. 416.18 Acres of Land*, 514 F.2d 627, 631–32 (7th Cir. 1975). Defendant in the present case does not contend that the proposed condemnation of his property is out of actual malevolence of the Secretary of the Army toward defendant. Furthermore, the Secretary of the Army is vested with sufficient authority to alter initial plans for proposed projects only insofar as the changes are necessary to successfully complete the approved project, and these changes are subject to the further scrutiny and approval of Congress when additional funds are requested to effectuate the changes. As to the particular change in the total acreage sought to be acquired by the Secretary in the present case, the court

is of the opinion that the project as altered has been sufficiently reviewed and approved by Congress and that such change does not render the Secretary's exercise of discretion either arbitrary or capricious, or in any way constitute an abuse of his discretion. *See, United States v. 187.40 Acres of Land, etc., supra*, at 57.

Defendant also claims that the proposed condemnation of his property was not included as a part of the original project in the maps prepared by the Corps of Engineers and is not now necessary for any valid public use in connection with the flood control project. As a consequence defendant contends that the present proceedings constitute an arbitrary and discriminatory abuse of power by the Secretary of the Army.

■ The role of the court upon judicial review of condemnation cases does not encompass consideration of whether the land taken is actually necessary for the successful operation of the project. Our inquiry is concluded once we establish the requisite statutory authority and the propriety of the public purpose of such acquisitions; the need and necessity of the land being taken is wholly within the opinion of the Secretary and the taking of more land than is necessary for the express public use is no defense to condemnation acquisition. *United States v. 187.40 Acres of Land, etc., supra*, at 57; *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *United States ex rel. T. V. A. v. Welch*, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1946).

■ The role of the court in considering whether the exercise of the power of eminent domain is for a public purpose in this instance is also circumscribed and extremely narrow. The determination of what constitutes a public purpose and what type of taking is for a public use is peculiarly within the function of Congress pursuant to the application of its police power and in the interest of promoting the general welfare. The amount and character of the land to be taken for the approved project and the need for a particular tract rests in the discretion

of the legislative branch, and the agency authorized by the legislature to do the taking may do so to the full extent of its statutory authority. *Berman v. Parker, supra,* 348 U.S. at 32, 75 S.Ct. 98; *United States ex rel. T. V. A. v. Welch, supra,* 327 U.S. at 551–52, 66 S.Ct. 715. The remaining function of the court is solely to consider whether the purpose for which defendant's property was taken is in fact for a congressionally authorized public use. *United States v. 416.18 Acres of Land,* 514 F.2d 627, 631 (7th Cir. 1975).

The declaration of taking filed in connection with the proposed condemnation of defendant's property sets forth the public use for such taking as follows: "The said land is necessary to provide for the establishment of a flood control project and for other uses incident thereto." Defendant states, however, that on November 18, 1974, he was advised by the District Engineer for the Corps of Engineers that one of the purposes of the acquisition of defendant's property was to establish a relatively uniform project boundary, and that in considering an easily identifiable boundary and with the utilization of natural ridges and existing roads for that purpose, the Army Corps of Engineers had previously decided to acquire only a portion of defendant's land. Defendant contends that this is not a valid public use in justification for the exercise of the power of eminent domain.[1] Defendant further maintains that any taking of his land for the purpose of "wildlife mitigation" is an illegal exercise of the power of eminent domain in that it is not a use which was set forth in the applicable declaration of taking and because such an acquisition would be to the benefit of the Commonwealth of Pennsylvania and not the United States.

■ It is the court's conclusion based on the facts and circumstances adduced from the record in this case that the proposed taking of defendant's land is for a valid,

congressionally-approved public use; namely, to provide an area to mitigate the loss of wildlife habitat resulting from the flooding of the acreage consisting of the permanent reservoir and possible additional flood pools. (See Ex. 3 attached to the government's motion to strike). "Wildlife mitigation" areas together with recreational facilities are clearly two important considerations in a flood control project. House Document 565 and other maps prepared by the Corps of Engineers and considered by Congress prior to their approval of the Raystown Lake Project specifically provide for various recreational and wildlife mitigation areas within the project's recommended boundaries. While the area including the defendant's property is not within the portion of the project area designated as a wildlife mitigation area in the map prepared by the Corps of Engineers and included in defendant's amended answer as Exhibit "B", the defendant's property is clearly within the delineated boundaries of the proposed project as originally planned and drawn on the map. It is true that the map does not indicate a specific use to be allocated the area encompassing defendant's property, but, nevertheless, defendant's property was intended to be acquired from the outset, presumably for a use to be determined later depending on the needs of the flood control project; to wit, as a wildlife mitigation area. Congress considered the Raystown Lake Project as presented in House Document 565 and authorized it by Act of Congress, October 23, 1962, P.L. 87–874, 87th Congress, 76 Stat. 1173, to be funded by Act of Congress, August 25, 1972, P.L. 92–405, 92nd Congress, and to be constructed "substantially in accordance with . . . H.D. 565. . . ."

■ The possibility that the acquisition of defendant's property is also for the purpose of establishing a definite boundary along a natural and identifiable ridge would

---

1. While the present proposed condemnation of 67.59 acres of defendant's land apparently is a part of the acquisition of all properties on one side of a natural ridge which defendant's property straddles, defendant had offered 15 to 18 acres to the Army Corps of Engineers which would establish a boundary at Township Route No. 404. Defendant's present claim is the consequence of the Corps of Engineers' refusal of this offer.

not render the "wildlife mitigation" purpose invalid. The creation of a boundary is always involved in the designation of a specific area to a particular use and is a natural consequence of the acquisition of such lands. Such use is merely ancillary to the main purpose of "wildlife mitigation" and does not serve to defeat its validity as a congressionally-approved public use. It is not within the province of the courts to review the choice of a boundary line or the extent to which property should be taken for a public use; once having determined that the taking is for a recognized and authorized public use the judicial function is exhausted, providing that just compensation is made. *Berman v. Parker, supra,* 348 U.S. at 35–36, 75 S.Ct. 98; *Shoemaker v. United States,* 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170, 184 (1893).

■ Similarly, the court will not inquire into whether these acquired lands are to be made available to the Pennsylvania Game Commission or the Pennsylvania Fish Commission for wildlife management purposes pursuant to the authorized public use, rather than remaining in the possession and control of the United States. Clearly the cooperation of the various states in the management of wildlife and wildlife habitat on lands acquired by the federal government and administered by its agencies is authorized and provided for in the Fish and Wildlife Coordination Act, March 10, 1934, P.L. 85–624, 16 U.S.C. § 661, et seq. Having determined that the purpose of "wildlife mitigation" is within the authority of Congress, the means of executing it and fulfilling the ends of the project are solely for Congress to determine. *Berman v. Parker, supra,* 348 U.S. at 33, 75 S.Ct. 98.

■ The court is further of the opinion that the public use for which defendant's property is being taken is sufficiently set forth in the complaint and declaration of taking and that these documents adequately apprise defendant both of the proposed taking and use of such property. The declaration of taking states that the purpose of the acquisition is the "establishment of a flood control project and for other uses incident thereto." The creation and administration of areas for the management of wildlife displaced by reason of the flood control project is clearly an incidental use within the meaning of the declaration of taking. Where the taking as proposed appears to be within the congressionally-approved project there is no reason for the court to require an amended complaint and declaration of taking, amplifying and elaborating on the specific purpose for the particular taking incident to the general authorized public use. See, *United States v. 64.-88 Acres of Land, etc.,* 244 F.2d 534, 536 (3d Cir. 1957).

Accordingly the motion to strike the defenses filed by the United States pursuant to Rule 12(f) will be granted.