691 F.2d 474
 13 Envtl. L. Rep. 20,383
 UNITED STATES of America, Plaintiff-Appellant,
v.
82.46 ACRES OF LAND, MORE OR LESS, SITUATE IN CARBON COUNTY,
WYOMING; Sanger Ranches, Inc., a Wyoming
Corporation, et al., and Unknown Owners,
Defendants-Appellees.
National Wildlife Federation and Wyoming Wildlife
Federation, Amici Curiae.
 No. 80-1921.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 22, 1982.
 
 Dirk D. Snel, Washington, D. C. (Edward J. Shawaker, Jacques B. Gelin, Attys., James W. Moorman, Asst. Atty. Gen., Anthony C. Liotta, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Charles E. Graves, U. S. Atty., Cheyenne, Wyo., with him on the brief), for plaintiff-appellant.
 Marlin D. Opperman of Opperman, Kokish & Vranesic, P. C., Denver, Colo., for Sanger Ranches, Inc., defendant-appellee.
 Robert J. Golten, and James R. Montgomery, Legal Intern, Boulder, Colo., amici curiae Nat. Wildlife Federation and Wyoming Wildlife Federation.
 Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This appeal concerns a condemnation proceeding brought by the United States pursuant to the provisions of Section 205(a) of the Federal Land Policy Management Act of 1976, Pub.L.No. 94-579, 90 Stat. 2755 (FLPMA), now appearing as 43 U.S.C. § 1715(a).[1] That statute reads as follows:
 
 
 2
 (a) Notwithstanding any other provisions of law, the Secretary, with respect to the public lands and the Secretary of Agriculture, with respect to the acquisition of access over non-Federal lands to units of the National Forest System, are authorized to acquire pursuant to this Act by purchase, exchange, donation, or eminent domain, lands or interests therein: Provided, That with respect to the public lands, the Secretary may exercise the power of eminent domain only if necessary to secure access to public lands, and then only if the lands so acquired are confined to as narrow a corridor as is necessary to serve such purpose. Nothing in this subsection shall be construed as expanding or limiting the authority of the Secretary of Agriculture to acquire land by eminent domain within the boundaries of units of the National Forest System.[2] (Emphasis added.)
 
 
 3
 The present problem has its genesis in the federal land grants of the 1800's, whereby the federal government, which initially owned all the land here involved, conveyed alternate sections to private parties. Such grants resulted in a "checkerboard" pattern of land ownership in many western states, to the end that sections granted to private parties frequently are surrounded by public lands, and, conversely retained public land is often completely surrounded by land owned by private parties. In this regard, see Leo Sheep Co. v. United States, 440 U.S. 668, 670-77, 99 S.Ct. 1403, 1405-08, 59 L.Ed.2d 677 (1979). It is at once apparent that this checkerboard ownership pattern necessarily impedes the ability of government employees and the general public to travel to and from federal land, as frequently the only access routes traverse private property.
 
 
 4
 In the present proceedings, the United States, at the request of the Assistant Regional Solicitor of the Department of Interior and the Bureau of Land Management, sought to acquire, under 43 U.S.C. § 1715(a), several privately owned parcels of land for the declared purpose of providing access to certain public lands. Specifically, in its Complaint in Condemnation, the United States sought to acquire seven easements on pre-existing roadways, three of which related to a so-called Muddy Creek Road, two of which related to the Willows Road, with the remaining two relating to the Bridger Pass Road, all located in the State of Wyoming. It was the declared intent of the United States to acquire these existing private roadways and to then improve, relocate and expand these roadways so as to provide access to public lands. The land which the United States sought to thus acquire is owned by Sanger Ranches, Inc., a Wyoming corporation, and the appellee in the present proceeding. All of the easements condemned were 100 feet in width.
 
 
 5
 The United States estimated just compensation for the land in question to be $15,150.00, and deposited that sum in the registry of the United States District Court for the District of Wyoming. Shortly thereafter, the United States obtained an order for delivery of possession of the property described in the complaint, in accord with the procedure outlined in 40 U.S.C. § 258a and Fed.R.Civ.P. 71A.
 
 
 6
 Sanger Ranches pled eight separate defenses to the taking. The United States filed a motion to strike seven of the eight defenses pled by Sanger.[3] Thereafter, Sanger filed a combined motion to vacate the order for delivery of possession previously entered, an "opposition" to the government's motion to strike, a motion to dismiss and a motion for summary judgment. The government then filed a motion which "resisted" Sanger's combined motion.
 
 
 7
 It was in this procedural setting that the matter was scheduled for hearing in the district court. The transcript of the hearing on the aforesaid motions contains extended argument between opposing counsel, and testimony from Charles A. Sanger, President of Sanger Ranches, Inc., and Albert Vern Witham, Assistant Regional Solicitor, Department of Interior. During his testimony, Sanger stated his belief that sufficient access to BLM lands is currently provided by existing public roadways. To support this argument, the defense introduced a map, Exhibit A, drawn by Sanger himself, which depicted the location of Sanger Ranches and BLM lands, numerous existing roadways, and the easements condemned. In addition, Sanger testified that the typical width of roads in the condemnation area ranged from 22 to 39 feet from barrow pit to barrow pit. The government stipulated that there is no 100-foot-wide road in the area.
 
 
 8
 Vern Witham was a rebuttal witness for the government whose testimony laid the foundation for the introduction of the government's only exhibit, Exhibit 1. Witham testified that on December 13, 1978, he sent a letter to the State Director of the BLM in Cheyenne, Wyoming, requesting that the Director prepare a memorandum explaining whether the proposed condemnation satisfied the requirements stated in 43 U.S.C. § 1715. Witham identified the response of the State Director, which set forth the reasons the condemnation was necessary to secure access to public lands, the purposes for which such access was desired, and the rationale supporting condemnation of a 100-foot-wide easement. Both the letter requesting information and the response are included in the government's exhibit.
 
 
 9
 At the conclusion of this hearing, the district court took the entire matter under advisement, and later entered an order on December 14, 1979, denying the government's motion to strike in its entirety. Further, the district court held that the United States did not have the authority to take certain of the seven parcels of land "because ... the lands (to be) serviced by the roads proposed by the government in these areas are already accessible to the public by other public roads presently in existence, or subject to this present condemnation action." In this same connection, the district court went on to state that "(w)e cannot say that it is necessary to secure access when adequate access is already secured." As to those particular parcels of land which the district court found were condemned without authorization, the court vacated its earlier order for possession, and dismissed the complaint.
 
 
 10
 With regard to the remaining parcels of land, the district court denied Sanger's motion to vacate the order of possession and at the same time denied Sanger's motion for dismissal of summary judgment, the district court ruling that the government, under 43 U.S.C. § 1715(a), did have the authority to condemn those parcels in order to secure access to public lands. However, as concerns those particular parcels, the district court also indicated that the government's attempt to acquire land for a 100-foot roadway contravened the further requirement of 43 U.S.C. § 1715(a) that any lands acquired pursuant to that statute be "confined to as narrow a corridor as is necessary to serve such purpose."
 
 
 11
 Both parties filed motions to amend the district court's order. The district court thereafter entered an Order Granting Motion to Amend, and Granting Partial Summary Judgment and Motion to Dismiss on May 15, 1980. By the May 15, 1980, order, the district court corrected several "clerical errors" in its order of December 14, 1979, and also attempted to "clarify" the earlier order. However, the district court adhered to its earlier order denying the government's motion to strike and refused to reconsider its earlier order dismissing that part of the government's complaint which condemned land to which access routes presently existed. In addition, the district court granted the government 20 days within which to amend its complaint by seeking rights-of-way which were less than the 100 feet previously sought, indicating that if the government declined to amend its complaint, the district court would then grant the defendant's motion to dismiss the entire complaint. The district court thereafter, on June 6, 1980, entered an Amended Order Granting Motion to Amend, and Granting Partial Summary Judgment and Motion to Dismiss, which made minor changes in its order of May 15, 1980.
 
 
 12
 On July 9, 1980, the government advised the district court that it did not intend to file an amended complaint as permitted by the court's order of June 6, 1980. In response, the district court immediately vacated in its entirety the declaration of taking and entered an order dismissing the entire action. The government now appeals the district court's order of dismissal.
 
 
 13
 Assuming the authority of a governmental entity to condemn, the necessity for an acquisition, and the amount and character of the land to be taken for a project, is generally not subject to judicial review. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed.2d 27 (1954). The fact that the United States in a particular condemnation proceeding may be taking more land than is needed is no defense to the taking. See Wilson v. United States, 350 F.2d 901 (10th Cir. 1965). In the instant case, however, the government, on appeal, concedes that the question of necessity is subject to judicial review because the statute which confers on the Secretary the authority to condemn is not an unqualified delegation of authority, but is only a qualified delegation of authority. In this regard, 43 U.S.C. § 1715(a) authorizes the Secretary to acquire land by eminent domain, but only if such lands are "necessary to secure access to public lands, and then only if the lands so acquired are confined to as narrow a corridor as is necessary to serve such purpose." (Emphasis added.) So, under 43 U.S.C. § 1715(a), the very authority to condemn is limited to "necessary" lands, and the Secretary's determination that a particular parcel is "necessary," is, under such circumstances, subject to judicial review. As indicated, the government, on appeal, concedes such to be the case.
 
 
 14
 The district court found that certain of the tracts sought to be taken by the Secretary were not "necessary to secure access to public lands." From the record presently before us, we are unable to tell whether that finding is, or is not, supported by the record. The record, such as it is, was made at a hearing on various motions filed by the parties. The testimony was rather limited. Sanger did express his opinion on the issue of "necessity," and in connection therewith used a map. However, Sanger's testimony, and the map used in connection therewith, are exceedingly difficult to follow. Such might be intelligible to persons familiar with the local topography, but we are not personally conversant with the terrain of Carbon County, Wyoming. Under the circumstances, it would be sheer guesswork on our part to hold that the district court's finding of "lack of necessity" is supported by the present record. The record must be more fully developed if we are to give the matter a meaningful review.
 
 
 15
 The district court also held that a 100-foot roadway contravened that part of 43 U.S.C. § 1715(a) which confines any taking "to as narrow a corridor as is necessary to serve such purpose." Such finding is apparently based on that fact that the existing private roadways which the Secretary seeks to acquire are only 25 to 30 feet wide. In our view, the Secretary in acquiring lands under 43 U.S.C. § 1715(a) is not necessarily limited to the width of a pre-existing roadway which he seeks to acquire. The question of whether a roadway 100 feet in width is "as narrow a roadway as is necessary to serve such purpose" can only be determined after a full development of all relevant facts.
 
 
 16
 Judgment vacated, and the case is remanded with directions that the district court reinstate the action and the declaration of taking, and conduct further hearings.
 
 
 17
 McKAY, Circuit Judge, concurs in the opinion of the court and files the following separate statement:
 
 
 18
 I concur in the court's opinion. I write separately to indicate my view that section 205(a) of FLPMA requires the Secretary, before acquiring access to federal lands through condemnation, to make a substantiated determination of the present and reasonably anticipated future uses of the federal lands.[1] The Secretary may then make a decision to condemn an access corridor necessary to meet these expected uses. In determining the extent of condemnation "necessary" to meet the expected uses, the Secretary should consider, for example, the types and volume of anticipated traffic, as well as the safety of those using the access route. Once he has considered the relevant factors, his decision is subject to review, as we have indicated, but only for an abuse of discretion in light of the "necessary" standard contained in the authorizing legislation. However, if a trial court finds that the Secretary has not made an initial determination of expected use, the proper remedy may well be to remand to the agency with instructions to make that determination and prepare a record suitable for reviewing the exercise of discretion.
 
 
 19
 The record before us is inadequate to inform us what, if anything, the Secretary has done as a prelude to his decision to acquire these access parcels. If the Secretary has in fact conducted the appropriate initial determination required by the statute, then, of course, the trial court can review on remand the Secretary's condemnation decision. However, I would not preclude, and I do not understand the court's opinion to preclude, the Secretary from voluntarily seeking a further remand from the trial court to the agency to permit the development of its administrative record if, on reflection, the Secretary considers the present record inadequate.
 
 
 
 [1]
 In Schedule A attached to its Complaint in Condemnation the government also noted authorization for the taking under 40 U.S.C. § 257 and 40 U.S.C. § 258a-258e which, in conjunction with Fed.R.Civ.P. 71A, set forth administrative and judicial procedure for federal acquisition of private property
 
 
 [2]
 In Section 103(g) of the Act, 90 Stat. 2746, Congress has indicated that the term "Secretary," unless specifically designated otherwise, means the Secretary of the Interior. Prior to the enactment of FLPMA, the Secretary of the Interior and the BLM had no power to acquire land by eminent domain absent a specific authorization from Congress usually granted in appropriation bills
 
 
 [3]
 In its answer Sanger Ranches alleged that the United States lacked authority to take the lands, that the condemnation was undertaken in bad faith, and that the estate sought to be acquired exceeded the amount reasonably related to accomplishment of the government's articulated purposes. Further, Sanger Ranches claimed that the filing of the complaint was void for failure of the BLM to ascertain the impact of its action on the environment in accordance with Section 102(2)(C) of the National Environmental Policy Act of 1969. Finally, Sanger Ranches argued that the estimated amount of compensation deposited with the court was inadequate. The United States moved to strike all but this last defense
 
 
 [1]
 These uses may include both those promoted by government agencies as well as spontaneous citizen uses