**UNITED STATES of America,**

v.

**18.67 ACRES OF LAND,
et al., Defendants.**

**No. 1:CV–91–1315.**

United States District Court,
M.D. Pennsylvania.

May 14, 1992.

Robert R. Long, Jr., Asst. U.S. Atty., Scranton, Pa., for U.S.

Henry Heiser, Swope, Heiser & McQuaid, Gettysburg, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

On October 4, 1991 the United States of America filed a complaint in condemnation seeking to take fee simple title to 18.67 acres of land in Cumberland Township, Adams County, Pennsylvania, to be added to the Gettysburg National Military Park (the "Park"). According to the complaint (Schedule "B"), the purported owners are Harold L. Yingling, Betty J. Yingling, Keith L. Yingling and Kevin R. Yingling (the "Yinglings").

On November 27, 1991 the Yinglings filed an answer to the complaint setting forth the following three affirmative defenses:

1. The condemnation of the land is not necessary for the proper administration, preservation, and development of the Gettysburg National Military Park for the use, benefit and enjoyment of the public.

2. The estate in fee simple, sought to be acquired by the Plaintiff in this con-

demnation action, is not the minimum interest necessary to achieve the objectives identified for the specific area of the Park where the land is situate and to achieve the overall objectives of the Gettysburg National Military Park.

3. The condemnation of the land is not authorized by law.

On December 19, 1991 the United States filed a motion to strike the defenses raised in the Yinglings' answer. Supporting, opposing and reply briefs have been filed, and the motion is ripe for disposition.

The Yinglings, in their opposing brief, contend "that their answer either states or infers three legally sufficient defenses which they should be allowed to develop through discovery and litigate by a hearing on the merits." The brief then restates the three defenses as follows:

1) That the purpose for which the property [is taken] is not a public use;

2) That the Secretary of the Interior has not been vested with discretion in the acquisition of land within the park, pursuant to 16 U.S.C. § 430g–5, and shall only acquire the minimum Federal interest necessary to achieve the objectives identified for the specific areas of the park. And, by taking a fee simple interest in the subject land, the Secretary has overstepped the authority granted by Congress in enacting the statute; and

3) In the alternative, if it is determined that the Secretary of the Interior has been vested with limited discretion in the acquisition of land within the park pursuant to 16 U.S.C. § 430g–5, the Defendants contend that the Secretary has abused that discretion by taking more than the minimum Federal interest necessary to achieve the objectives identified for the specific area of the park.

Plaintiff, in its reply brief, contends that this represents an attempt by the condemnees to amend their answer by rephrasing their defenses in their opposing brief. Plaintiff cites various rules for the proposition that if the defense was not set forth in the answer, it has been waived. Plaintiff concedes, however, that the condemnees have arguably preserved their defense challenging the public use by denying paragraph 2 of the complaint and by raising its first original defense. Plaintiff further contends that no reading of the three original defenses raises the contention that the Secretary of the Interior ("the Secretary") abused its discretion. Nevertheless, anticipating that the court might accept and entertain the three modified defenses, plaintiff did reply to them.

The court believes that, for the purposes of the motion to strike, the defenses as restated in condemnees' brief are sufficiently stated or implied by the defenses set forth in the answer. Moreover, it is likely that, if requested, the court would grant leave to Yinglings to file an amended answer. The answer will, therefore, in the interest of judicial economy, be deemed amended to reflect the restated defenses.

## DISCUSSION

The court clearly has the authority under Fed.R.Civ.P. 12(f) to strike from a pleading "any insufficient defense". This court has previously provided guidance for evaluating the sufficiency of defenses raised in condemnation cases.

> The duty of this court is to determine whether such defenses as presented do indeed present substantial questions of law or fact which may not be stricken.... If any such substantial questions exist, the motion cannot be granted; ... neither will it be granted if the insufficiency of the defense is not clearly apparent on the face of the pleadings, ... nor can reasonably be inferred from any state of facts in the pleadings....

*United States v. 187.40 Acres of Land, Huntingdon County, Pennsylvania,* 381 F.Supp. 54, 56 (M.D.Pa.1974) (Nealon, J.).

In support of it's motion to strike, plaintiff argues that the court has no jurisdiction to review the decision of the Secretary in this matter. Plaintiff contends that the United States Supreme Court has held that decisions involving the nature or extent of a take are within either legislative or administrative discretion, and, therefore, immune from judicial review, citing *Berman v. Parker,* 348 U.S. 26, 35–36, 75 S.Ct. 98, 103–04, 99 L.Ed. 27 (1954); and *Shoemaker*

*v. United States,* 147 U.S. 282, 298, 13 S.Ct. 361, 368, 37 L.Ed. 170 (1893).

It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of the land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.

*Berman v. Parker, supra,* 348 U.S. at 35–36, 75 S.Ct. at 104.

Here, Congress has expressly granted to the Secretary the authority to acquire property for the Park:

**(a) General Authority**

The Secretary is authorized to acquire lands and interests in lands within the park by donation, purchase with donated or appropriated funds, exchange, or otherwise. In acquiring lands and interests in lands under sections 430(g)–4 to 430(g)–10 of this title, *the Secretary shall acquire the minimum Federal interests necessary to achieve the objectives identified for specific areas and the park.* (emphasis added)

16 U.S.C. § 430g–5.

The Secretary may acquire such property by condemnation, pursuant to 40 U.S.C. § 257.[1]

Plaintiff argues that the Secretary's designee, the National Park Service, has determined that the taking of the 18.67 acre Yingling tract is necessary to provide for the administration and preservation of the Park, and that it is not for this court, nor any court, to review or question the substance or validity of that judgment.

*Public Purpose*

■ Defendants' first restated defense is that the purpose for which the property

is taken is not a public use. However, it is quite clear that the condemnation action is for a congressionally authorized public purpose. Congress, by Pub.L. 101–377, § 1, Aug. 17, 1990, 104 Stat. 464, delineated the new boundary for the Park:

§ 430g–4(a)   Lands included in the park

In furtherance of the purposes of section 430g of this title, the Gettysburg National Military Park (hereafter in sections 430g–4 to 430g–10 of this title referred to as the "park") shall hereafter comprise the lands and interests in lands within the boundary generally depicted as "Park Boundary" on the map entitled "Gettysburg National Military Park Boundary Map", numbered NPS 305/80034–B, and dated March 1990, which shall be on file and available for public inspection in the Office of the Director of the National Park Service, Department of the Interior.

While plaintiff did not provide to the court a copy of the official Gettysburg National Military Park Boundary Map referred to in 16 U.S.C. § 430g–4(a), the court assumes that Schedule C to the complaint, which purports to be a map of the Park, accurately places the Yingling tract within the new Park Boundary.

Plaintiff's complaint (Schedule "A") states the public uses for which the land is being taken:

The land is required for the proper administration, preservation, and development of the Gettysburg National Military Park for the use, benefit, and enjoyment of the public.

It is quite clear that the use for which the property is being taken is a public use, and one authorized specifically by Congress when it approved a boundary map for the Park (16 U.S.C. § 430g–4) and au-

---

**1.** 40 U.S.C. § 257, *Condemnation of Realty for Sites and Other Uses,* provides:

In every cases in which the Secretary of the Treasury or any other officer of the government has been, or hereafter shall be, authorized to procure real estate for the erection of the public building or for other public uses, he may acquire the same for the United States by condemnation, under judicial process,

whenever in his opinion it is necessary or advantageous to the government to do so, and the Attorney General of the United States upon every application of the Secretary of the Treasury under this section and Section 258 of this title, or such other officer, shall cause proceedings to be commenced for condemnation within thirty (30) days from receipt of the application at the Department of Justice.

thorized the Secretary to acquire lands and interests in lands within the Park (16 U.S.C. § 430g–5). See: *United States v. Gettysburg Electric Railway Co.*, 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576 (1896).

■ Given this public use and the specific congressional approval for the taking of property within the Park boundary, this court has no jurisdiction to review the Secretary's decision that the 18.67 acre Yingling tract is necessary for the administration, preservation and development of the Park. Moreover, the timing of the take is entirely in the hands of the Secretary. The Third Circuit, in reviewing 40 U.S.C. § 257, found that the "statute indicates that the judgment as to the proper time of taking is to be that of the government official to whom the exercise of the power of eminent domain has been delegated by Congress." *United States v. Certain Parcels of Land*, 215 F.2d 140, 147 (3d Cir.1954) (passing on the Secretary of the Interior's authority to condemn historical buildings for the Independence National Historical Park in Philadelphia).

### Minimum Federal Interests

■ The only issue of substance for the court to decide is the role of the court in reviewing the necessity for the National Park Service to take a fee simple interest in the subject land, rather than some lesser interest. A fee simple interest is the maximum possible interest in real estate, as it includes the total bundle of rights and privileges that pertain to the property.

The first sentence of the enabling legislation, 16 U.S.C. § 430g–5(a), authorizes the acquisition of lands and interests in lands within the Park. If that were the extent of the statutory authorization, the court

would have little difficulty in finding that Congress intended to vest total discretion in the Secretary to determine not only the size of the tract to be taken, but the nature of the interest in the tract to be acquired. However, in adding the second sentence, Congress placed an unusual restriction on the Secretary: "In acquiring lands and interests in lands ..., the Secretary shall acquire the minimum Federal interests necessary to achieve the objectives identified for specific areas and the park."

This limitation is a clear congressional response to the suggestions set forth on page 28 of the Boundary Study prepared by the National Park Service:[2]

A broad range of options exist for protecting these areas, including conservation easements, cooperative agreements and purchase by the federal government. If Congress establishes a new park boundary, the National Park Service would prepare a revised *Land Protection Plan* for the park to outline preferred protection options on a tract-by-tract basis, consistent with the Boundary Study guidelines, management objectives, priorities and the minimum federal interest required to protect resources. The National Park Service would then meet with landowners in these areas to discuss acquisition possibilities and other ways of protecting land. An attempt would be made to reach an agreement with each landowner, generally in what is termed a "willing seller—willing buyer" basis. The National Park Service is committed to looking for ways of meeting both long-term protection objectives and individual landowners' interests within these outstanding resource areas.

---

**2.** The court has only been provided at this stage with a draft of the Boundary Study, dated August 1988 (attached as Appendix "A" to defendants' brief). As plaintiff made no contrary representation in its reply brief, the court assumes that the language set forth in this portion of the draft Boundary Study is substantially the same as that included in the final Boundary Study submitted to Congress, in response to the congressional mandate set forth in Pub.L. 100–132, § 2, Oct. 16, 1987, 101 Stat. 807:

"(b) Study by National Park Service.—The Secretary of the Interior through the National Park Service shall conduct a boundary study and shall submit a report to Congress within one year of the date of enactment of this Act, with recommendations with respect to the final development of the Gettysburg National Military Park. In conducting the study, the Secretary shall consult with the people of the community and their elected representatives at all levels as well as with other interested individuals and groups."

A preliminary evaluation of protection options for the proposed additions to the park has been made as a part of the Boundary Study. The National Park Service estimates that approximately 250 acres would eventually need to [be] owned and held in fee for road construction, public access or where private use is incompatible with long-term objectives. The majority of the remaining area (1650 acres), where some reasonable private uses are compatible with resource protection, could potentially be protected through less than fee arrangements, such as cooperative agreements, vegetative screening, or purchase and sell-back or lease-back agreements.

Defendants' brief, Appendix "A".

Both parties state that there are no reported cases interpreting 16 U.S.C. § 430g–5. However, the plaintiff would have the court believe that the analogous provision in the National Trail System Act, which conferred condemnation authority upon the Secretary for the Appalachian National Scenic Trail, has comparable language:

The appropriate Secretary may utilize condemnation proceedings without the consent of the owner to acquire private lands or interests therein pursuant to the section only in cases where, in his judgment, all reasonable efforts to acquire such lands or interests therein by negotiations have failed, and in such cases he shall acquire only such title as, in his judgment, is reasonable necessary to provide passage across such lands....

16 U.S.C. § 1246(g).

Plaintiff argues that in *United States v. 4.70 Acres of Land, etc.*, Civil No. 88–1876 (M.D.Pa. April 19, 1989) Judge Caldwell found that 16 U.S.C. § 1246(g) vested the Secretary with broad discretion to determine the amount and character of the land

to be condemned, and that this court should interpret 16 U.S.C. § 430g–5 in the same manner. In that case, Judge Caldwell recognized the court's very narrow scope of review when Congress grants such discretion to executive officials. He therefore struck the defendants' defenses challenging the extent of the estate "taken".

However, contrary to plaintiff's argument, the provisions of 16 U.S.C. § 1246(g), and 16 U.S.C. § 430g–5(a) are strikingly different. In the limiting clause at the end of § 1246(g), Congress stated "and in such cases he shall acquire only such title as, *in his judgment*, is reasonably necessary to provide passage across such lands...." (emphasis added). This is an express delegation of discretionary decision-making power to the Secretary.[3]

The court finds pertinent to its decision a case not cited by either party, but cited by Judge Caldwell in *4.70 Acres, supra*, namely *United States v. 82.46 Acres of Land*, 691 F.2d 474 (10th Cir.1982). *82.46 Acres* concerns section 205(a) of the Federal Land Policy Management Act of 1976, 43 U.S.C. § 1715(a), which limits the Secretary of the Interior's power to condemn land:

[W]ith respect to the public lands, the Secretary may exercise the power of eminent domain only if necessary to secure access to public lands, and then only if the lands so acquired are confined to as narrow a corridor as is necessary to serve such purpose.

Judge Caldwell distinguished that language, indicating that 16 U.S.C. § 1246(g) pertaining to the Appalachian Trail contained much broader language.

If the limiting clause were not present in 16 U.S.C. § 430g–5(a), the court would not have the authority to review the Secretary's decision. In *Berman v. Parker, su-*

---

**3.** The Yinglings, in their opposing brief, properly point out that elsewhere in the Act of August 17, 1990, Congress gave explicit discretionary authority to the Secretary. See, *e.g.,* 16 U.S.C. § 430g–5(c)(2):

"..., the Secretary *may* sell any or all such lands or interests to the highest bidder, in accordance with such regulations as the Secretary *may* prescribe, but any such conveyance shall be at not less than the fair market

value of the land or interest, *as determined by the Secretary.*" (emphasis added)
16 U.S.C. § 430g–5(c)(3):
"All Federal lands and interests sold or exchanged pursuant to this subsection shall be subject to such terms and conditions as will assure the use of the property in a manner which, *in the judgment of the Secretary,* will protect the park and the Gettysburg Battlefield Historic District...." (emphasis added)

*pra*, the Supreme Court put to rest the district court's "grave doubts" concerning the agency's right to take full title to the land as distinguished from the objectionable buildings on it:

> If the Agency considers it necessary in carrying out the redevelopment project to take full title to the real property involved, it may do so. It is not for the courts to determine whether it is necessary for successful consummation of the project that unsafe, unsightly, or insanitary buildings alone be taken or whether title to the land be included, any more than it is the function of the courts to sort and choose among the various parcels selected for condemnation.

> The rights of these property owners are satisfied when they received that just compensation which the Fifth Amendment exacts as the price of the taking.

*Berman v. Parker, supra,* 348 U.S. at 36, 75 S.Ct. at 104.

In *Berman,* unlike this case, the District of Columbia Redevelopment Act of 1945 contained no limiting language such as that contained in 16 U.S.C. § 430g–5(a). Similarly, in the other cases from the Middle District of Pennsylvania cited by the plaintiff in support of its motion to strike, namely *United States v. 67.59 Acres of Land,* 415 F.Supp. 544 (M.D.Pa.1976) (Herman, J.) and *United States v. 187.40 Acres of Land, supra,* pertaining to the Raystown Lake Project, the authorizing legislation, 33 U.S.C. §§ 591, 701 and 701c–1, contained no limiting language. Those decisions may thus be readily distinguished.

It is in recognition of the power of Congress in this area, and not in derogation of such power, that this court will refuse to strike the defense of abuse of discretion of the Secretary in determining the "minimum Federal interests necessary." The judiciary alone stands in the way of the executive branch's ignoring of congressional limitations on its delegations of authority. For the courts to shy away from review of such action would be to render such limitations unenforceable and meaningless. It should be noted that the Supreme Court, in *Berman, supra,* stated that, once the question of the public purpose has been decided, "the amount and character of the land to be taken ... and the need for a particular tract ... rests in the discretion of the *legislative* branch." *Berman v. Parker, supra,* 348 U.S. at 35–6, 75 S.Ct. at 104 (emphasis added).

This court, at this stage of the proceedings, therefore, believes that there is a sufficient question of both fact and law as to whether the Secretary has complied with the limiting provision of 16 U.S.C. § 430g–5(a) to preclude the court's granting of plaintiff's motion to strike that defense.

There has been no representation in the complaint as to the basis for the Secretary's determination that a fee simple interest is the minimum federal interest necessary to achieve the objectives identified for the specific area and the Park. The only light shed upon this subject is that provided by the statement on page 33 of the draft Boundary Study provided by the condemnees. That document contains a discussion of the 210–acre tract of which the 18.75 acre tract is a portion, as being related in some fashion to Howe and Wright Avenues:

> HOWE AND WRIGHT AVENUES (210 ACRES) These park avenues mark what was the extreme left flank of the Union line from the evening of July 2 through July 4. The lines, formed by Howe's Division of the Union 6th Corps to prevent a Confederate flanking attack behind the Round Tops, saw no action in the battle. Nine monuments commemorating Union positions now stand on this narrow strip of park land.

> Howe and Wright Avenues lie amid acres of privately owned open farmland, maintaining the setting of the monuments in an appearance close to that of 1863. Protection of these open farmlands would continue to allow the interpretation and commemoration of the positions in this area.

> Area Objective:

> Maintain the agricultural fields and view to the Round Tops in order to accurately interpret and commemorate the positions of Howe's Division of the Union 6th

Corps—the Union's extreme left flank—and show the importance of protecting the Union rear from a Confederate flanking movement.

Defendants' brief, Exhibit "A", page 33.

On the face of the statements made by the National Park Service on both pages 28 and 33 of its draft Boundary Study, therefore, one can only ask what the decision-making process may have been which led the National Park Service to take fee simple title when it would arguably appear sufficient for the stated purpose to maintain the existing privately-owned farmland as open farmland, a purpose readily accomplished by easement.

The court is not suggesting that it should conduct an evidentiary hearing to determine *de novo* what interest would represent the minimum federal interest necessary to achieve the stated objectives. Depending upon what procedures have in fact been undertaken, the court will give consideration either to (a) a remand to the National Park Service for the full development of a record with regard to the nature of the interest to be taken, or (b) if plaintiff is satisfied with the existing record, presentation of the administrative record to the court for its review. See *United States v. 82.46 Acres of Land, supra,* 691 F.2d at 478 (McKay, Circuit Judge, concurring).

 In either event, the court will do no more than review the administrative record to determine whether or not the Secretary's action is arbitrary or capricious or otherwise constitutes an abuse of discretion. This scope of review should give the proper measure of deference to both the legislative and executive branches in carrying out the legislative mandates regarding the boundary revision of the Gettysburg National Military Park.

An order will be entered consistent with this memorandum.

### ORDER #1

For the reasons set forth in the foregoing memorandum, IT IS ORDERED THAT:

1. Plaintiff's motion to strike (record document no. 8, filed December 19, 1991) is granted in part, and denied in part.

2. Plaintiff's motion to strike is granted as to all defenses set forth in the answer and as recast in Yinglings' brief, except for the defense that the Secretary has abused his discretion by taking more than the minimum federal interest necessary to achieve the objectives identified for the specific area and the park.

3. The court will by separate order schedule a case management conference.