**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**1.33 ACRES, SITUATED IN THE**
**COUNTY OF SAN LUIS**
**OBISPO, Defendant,**

and

**Louis Fiscalini, Defendant–Appellant.**

**No. 92–55221.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1993.

Decided Nov. 4, 1993.

Keith R. Denny, Ogle & Merzon, Morro Bay, CA, for defendant-appellant.

Peter A. Appel, Environment and Natural Resources Div., Washington, DC, for plaintiff-appellee.

Before: GIBSON,* HALL and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The federal government sold a landlocked parcel of real estate accessible by a road over Mr. Fiscalini's property. Several lawsuits arose regarding the sale and the easement. The government condemned the easement to settle the disputes. Mr. Fiscalini appeals the district court's decision, claiming that the government did not have the power to condemn the easement. We affirm.

## I. Facts.

In 1983, the General Services Administration (GSA) sold to a developer land previously used as an Air Force base, after the base was declared surplus property. The conveyance, for $415,556, was by quitclaim deed, but expressly included "any after-acquired title" to the Fiscalini land "which may be acquired by the Government." The land overlooks the sea and depends, for access to a highway, on a road through the Fiscalini property. When the Air Force base was in use, the government paid rent to Mr. Fiscalini for permission to use the road. Mr. Fiscalini did not agree upon access arrangements with the developer who purchased from the government, so when the developer continued to use the road without his permission, he sued for trespass in state court. The developer joined the United States and removed the case to federal court. The developer then sued the United States and Mr. Fiscalini in Claims Court to quiet title to an easement over the road.

The case now before us is a third lawsuit, commenced by the United States. The government sued to condemn an easement across the Fiscalini land in order to buy it, convey it to the developer, and thereby settle the developer's claims against the government. The district court granted summary judgment to the government for condemnation and held a trial to determine just compensation. It awarded Mr. Fiscalini $10,000 plus interest for the value of the easement. This appeal challenges whether the government had the power to condemn the easement at all.

## II. Analysis

Mr. Fiscalini makes two arguments. First, he argues that the statute pursuant to which the GSA sued to condemn the easement did not give it the authority to do so. We review the district court's statutory construction de novo. *In re Mitchell*, 977 F.2d 1318, 1320 (9th Cir.1992). Second, he argues that the district court erred in denying him the opportunity to prove the existence of a preexisting easement. We reject both arguments.

### A. Authority to Condemn.

The government asserts a right to condemn under The Federal Property and Administrative Services Act of 1949, 40 U.S.C. §§ 471–544. It relies on two sections, 40 U.S.C. § 484(c) and 40 U.S.C. § 490(a)(12). The former section, on disposal of surplus property, includes "necessary or proper" language which we conclude is broad enough to authorize the condemnation:

**Method of disposition.**

Any executive agency designated or authorized by the Administrator to dispose of surplus property may do so by sale, exchange, lease, permit, or transfer, for cash, credit, or other property, with or without warranty, and upon such other terms and conditions as the Administrator deems proper, and it may execute such documents for the transfer of title or other interest in property and *take such other action as it deems necessary or proper to dispose of*

* The Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

*such property* under the provisions of this title.

40 U.S.C. § 484(c) (emphasis added).

Mr. Fiscalini argues that because the government quitclaimed the surplus Air Force property in 1983, and did not condemn the easement until 1990, it lost whatever power it once might have had with regard to the property. He correctly points out that the antecedent of "such property" in the enabling statute, § 484(c), is "surplus property." That term is defined to mean "excess property not required." 40 U.S.C. § 472(g). The term "excess property" means "property under the control of any Federal agency which is not required...." 40 U.S.C. § 472(e). Carrying these definitions back into the enabling statute means that the "necessary and proper" action must be for the disposal of property under the control of an agency. Since the property to be disposed of had not been under the control of the agency for seven years, Mr. Fiscalini reasons that the enabling statute cannot apply. Even if it did, he suggests, the words "necessary and proper" do not embrace condemnation.

We have found no cases construing the statute at issue in analogous circumstances. Counsel identified authority, though, in a similar statute applied in similar circumstances. In *United States ex rel. Tennessee Valley Authority v. Welch,* 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1946), the TVA had built a dam which flooded out a highway, stranding 216 families. Buying out the property owners was considerably less expensive and more practical than building an alternative highway, so the TVA decided to buy or condemn their land. The Supreme Court reversed a circuit court decision that the TVA statute did not confer the power to condemn. The statute gave the TVA the power to condemn property which it "deems necessary for carrying out the provisions of this Act." While the condemnation, taken separately, would not relate to the specific purposes of the legislation, the Court refused to "break one inseparable transaction into separate units." *Id.* at 552–53, 66 S.Ct. at 717–18. The practicality of buying the land instead of replacing the highway was relevant to its public purpose, because "the Government, just as anyone else, is not required to proceed oblivious to elements of cost." *Id.* at 554, 66 S.Ct. at 719.

The statute in the TVA case expressly provided that it should be "liberally construed." While the statute we construe has no such language, we do not think that requires a different result. The statute before us, no less than the TVA statute, permits the exercise of common sense to save money. The statutory declaration of policy expresses the purpose of providing "an economical and efficient system" for the disposal of surplus property. 40 U.S.C. § 471(c). We have liberally construed federal condemnation power without an express statutory direction to do so:

> The rule that grants of the power of eminent domain are to be strictly interpreted against the government and in favor of the property owner generally has not been applied to federal statutes authorizing executive officers and public service corporations to condemn property. Emphasis has been focused upon the purposes to be accomplished, and *such legislation has been treated with extreme liberality to effectuate the promotion of constitutional federal projects.*

*United States v. Kennedy,* 278 F.2d 121, 126 n. 17 (9th Cir.1960) (emphasis added) (quoting 3 *Sutherland Statutory Construction* § 6505 (3d 1943)).

We accept the proposition that the "necessary or proper" action must relate to the disposal of property under the control of the agency, so that in this case the condemnation must relate to the disposal of the Air Force base to the developer seven years before. But we cannot accept the proposition that the time interval prevents the relationship. The central event of the disposal process should have been the conveyance, and the conveyance by quitclaim deed no doubt was intended to complete the disposal of the excess property with no further obligations. But it did not. It triggered three lawsuits. Seven years after the conveyance, the government is still mired in litigation.

The condemnation should be treated as part of what the *TVA* case called a "single integrated effort" to dispose of the property.

*TVA*, 327 U.S. at 553, 66 S.Ct. at 718. Its purpose was to end the litigation about the disposal, its scope and expense were such as to make it incidental to the disposal, and its effect would be completion of the troubled disposal. Spending ten thousand dollars to escape from litigation on a half million dollar disposal was consistent with the express statutory purpose of providing for "an economical and efficient system" for the disposal of surplus property. 40 U.S.C. § 471(c). Maybe if the government slogged through all the litigation, it would prevail. But parties often wisely choose a cheap settlement over an expensive victory, because the cheap settlement is economical and efficient. We cannot say that condemning the easement was arbitrary, capricious, or a bad faith means of winding up the property disposal. *See Chapman v. Pub. Util. Dist. No. 1 of Douglas County, Wash.*, 367 F.2d 163, 167 (9th Cir. 1966).

We have previously upheld condemnation of mineral rights which the government did not need for its purpose of establishing a naval air station, where the ownership of the mineral rights would increase the value of the land should the government later wish to sell it. In *Southern Pacific Land Co. v. United States*, 367 F.2d 161 (9th Cir.1966), we reasoned that "[a]dvantageous liquidation of the Government's investment is a legitimate consideration in determining the estate to be taken." *Id.* at 163. We took this as an application of the general principle that "The cost of public projects is a relevant element in all of them, and the government, just as anyone else, is not required to proceed oblivious to the elements of cost." *Id.* (citing *TVA*, 327 U.S. at 554, 66 S.Ct. at 719). The case at bar similarly involves a taking of something which the government does not need or want, because the taking is an efficient means of facilitating the economical disposal of surplus property.

We might be reluctant to find a power to condemn had Congress not conferred it on this agency in any respect. But Congress has conferred on the agency the power "to acquire by purchase, condemnation or otherwise, real estate and interests therein." 40 U.S.C. § 490(a)(12). That statutory provision does not speak to the case at bar, because it is in a statute listing powers given the GSA Administrator "to maintain, operate, and protect any building, property, or grounds." *Id.* at § 490(a). The government condemned the easement in the case at bar in order to dispose of the Air Force base, not maintain it. Nevertheless, the express grant of the power to condemn shows that Congress entrusted this agency with the power of eminent domain. We are not prepared to find a negative implication in the absence of such a power in the disposal provision of § 484(c) for two reasons. First, that inference would conflict with the express statutory purpose of practicality and efficiency. Second, unlike the property maintenance statute just quoted, the disposal statute does not include a list of nineteen specific powers, so absence of a listed power from the disposal statute does not suggest a purpose of negation of that power. Instead, the "necessary or proper" clause suggests broad power.

### B. The Ancient Easement.

Months after the court had granted summary judgment on whether the government could condemn the easement, Mr. Fiscalini sought to reopen the question at the pretrial hearing, ten days before the damages trial. His reason was that his attorneys had recently found old records in the recorder's office suggesting that there was already an easement across his land, so the condemnation was not necessary to provide highway access to the landlocked parcel. The documents did not prove this plainly and clearly. Rather, they gave rise to a possible inference. Furthermore, assuming the ancient easement exists, the condemnation might still have been necessary. The ancient easement is for a road twenty-five feet wide. The easement condemned by the government follows the path of the road, but is fifty feet wide. We cannot assume that a twenty-five foot wide easement, if it existed, would have obviated the need for a road on a fifty foot easement.

■ "Law of the case" doctrine gives a court discretion to reconsider an issue previously decided. *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir.1990). The court barred introduc-

**74**

tion because the significance of the documents was not clear, Mr. Fiscalini had given no reason why these ancient documents could not have been found earlier, and summary judgment had long since been granted. The district court did not abuse its discretion.

AFFIRMED.