**Brian A. MOLLER–BUTCHER, Individually and d/b/a M.E.S. Equipment, Inc., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF COMMERCE, BUREAU OF EXPORT ADMINISTRATION, Respondent.**

**No. 92–1196.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 19, 1993.

Decided Jan. 4, 1994.

Anne Robbins argued the cause for petitioner. With her on the briefs were Craig E. Stewart and Allan Tuttle.

Deborah Ruth Kant, Atty., U.S. Dept. of Justice, argued the cause for respondent. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., U.S. Dept. of Justice, Barbara C. Biddle, Atty., U.S. Dept. of Justice, and Thomas C. Barbour, Sr. Trial Atty., U.S. Dept. of Commerce.

Before: EDWARDS, SILBERMAN, Circuit Judges, and SHADUR,* Senior District Judge, United States District Court for the Northern District of Illinois.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

* Sitting by designation pursuant to 28 U.S.C.

HARRY T. EDWARDS, Circuit Judge:

On April 19, 1984, the United States Department of Commerce ("the Department") charged Brian Moller–Butcher and M.E.S. Equipment, Inc. (a company controlled by Moller–Butcher) with multiple violations of the Export Administration Act of 1979, 50 U.S.C. App. §§ 2401–2420 (1988) ("EAA"). Moller–Butcher failed to answer the charges and, on February 19, 1986, an Administrative Law Judge ("ALJ") of the Department entered a default judgment against him. Pursuant to his authority, the ALJ imposed a sanction denying Moller–Butcher export trading privileges for twenty years. The Secretary affirmed the ALJ's decision.

Four years later, Moller–Butcher filed a motion with the ALJ seeking a reduction in his sanction. The ALJ held a full hearing in which both Moller–Butcher and the Department participated. At the close of the hearing, the ALJ granted Moller–Butcher's motion. The ALJ was convinced that, among other things, Moller–Butcher had been sufficiently penalized by the cumulative fines and sentences imposed in separate criminal proceedings involving the same export transgressions at issue in this case. The Acting Under Secretary of Commerce for Export Administration ("Under Secretary") rejected the ALJ's modification decision, concluding it was merely advisory. The Under Secretary went on to issue an order holding that Moller–Butcher had not presented sufficient justification for lowering the original sanction which, in her view, was proper in light of the seriousness of Moller–Butcher's offenses.

Moller–Butcher now petitions for review of the Under Secretary's order, arguing that it exceeds the scope of her authority under the EAA and, alternatively, that it is arbitrary and capricious. The Government argues that we lack jurisdiction to reach the questions raised by Moller–Butcher, because, under 50 U.S.C.App. § 2412(c)(3) (1988), the court may review only those issues necessary to determine liability. We agree with the Government. Section 2412(c)(3) unquestionably limits judicial review of the Secretary's orders

§ 294(d) (1988).

issued pursuant to section 2412(c)(1). Thus, because Moller–Butcher's petition is devoid of any issue necessary to determine liability, we dismiss it for lack of jurisdiction.

## I. BACKGROUND

Brian Moller–Butcher is the founder of M.E.S. Equipment, Inc., a United States corporation based in Boston, Massachusetts. From May 1979 to January 1981, Moller–Butcher and his company exported or tried to export electronic testing and semiconductor manufacturing equipment from the United States to Great Britain and Sweden. With Moller–Butcher's knowledge, the equipment was then reexported to Bulgaria, Poland or Romania. The items Moller–Butcher traded were controlled commodities, classified as such by the Secretary for national security reasons. *See* 50 U.S.C.App. § 2404 (1988); Declaration of Randolph Williams, *reprinted in* Joint Appendix ("J.A.") 154–55. Prior to exporting these items Moller–Butcher was required by law to obtain a validated export license, 15 C.F.R. §§ 372.1(b), 372.4 (1985), but he failed to do so.

In addition to other authorities charging Moller–Butcher with criminal violations of export laws in the United States and Great Britain, the Department initiated a civil proceeding on April 19, 1984 against him charging that he had violated the EAA and the Export Administration Regulations, 15 C.F.R. Parts 368–399 (1985). Because Moller–Butcher did not answer the Department's charging letter, the ALJ entered a default judgment and order denying him export privileges for twenty years. *See In re Brian A. Moller–Butcher,* 51 Fed.Reg. 10,418 (1986). The Secretary affirmed the ALJ's decision on March 21, 1986. *Id.*

Several years later, on May 31, 1990, Moller–Butcher filed a motion with the ALJ who had previously heard the merits of his case, asking that his suspension of export privileges be commuted to the period in which the suspension had already been in effect. *See* Motion to Modify Sanctions, *reprinted in* J.A. 15. The ALJ conducted a hearing on the motion. At the hearing, Moller–Butcher argued that the sanctions had devastated his business and, combined with the criminal

penalties he had received in other proceedings, the Government's interest in deterring future export violations had been served. The Department argued that the original sanctions were proper because Moller–Butcher had committed multiple violations and had falsified material information. *See* Dep't of Commerce Submission for the Record, *reprinted in* J.A. 157–64. The ALJ granted Moller–Butcher's motion and ordered the suspension of his export privileges reduced to seven years. *In re Brian A. Moller–Butcher,* 57 Fed.Reg. 15,049, 15,050–51 (1992), *reprinted in* J.A. 173, 181.

The Under Secretary reviewed the ALJ's modification decision. She stated her belief that only the Secretary had the authority to grant a sanction modification and declared the ALJ's modification decision merely "an advisory recommendation." *Id.* at 15,049–50, *reprinted in* J.A. 184–85. The Under Secretary went on to deny Moller–Butcher's motion to reduce the original suspension, finding twenty years to be an appropriate sanction for the offenses he committed. *Id.* Moller–Butcher now asks this court to review the Under Secretary's decision. We are obligated to decline this invitation, for Congress clearly has placed decisions of the type presented here outside the scope of our jurisdiction.

## II. DISCUSSION

Moller–Butcher challenges the Under Secretary's decision on two grounds. First he argues that her order "reversed" the ALJ's decision to reduce his sanction, thereby exceeding the scope of her authority under section 2412(c)(1), which permits the Secretary only to "affirm, modify, or vacate" an ALJ's decision. *See* 50 U.S.C.App. § 2412(c)(1) (1988). Second, Moller–Butcher maintains that the Under Secretary's decision was arbitrary and capricious and an abuse of her discretion.

■ The Government correctly argues that we cannot consider Moller–Butcher's claims, because, under section 2412(c)(3), the court may review *only* those issues necessary to determine *liability:*

·The order of the Secretary under paragraph [2412(c)(1) ] shall be final, except that the charged party may, within 15 days after the order is issued, appeal the order in the United States Court of Appeals for the District of Columbia Circuit, which shall have jurisdiction of the appeal.... *The court may review only. those issues necessary to determine liability for. the civil penalty or other sanction involved.*

50 U.S.C.App. § ·2412(c)(3) (1988) (emphasis added). Thus, section 2412(c)(3) precludes us from reviewing judgments on sanctions made by the Secretary pursuant to section 2412(c)(1).·

This is not a case in which Congress has remained silent on the breadth of our authority to review an agency decision. Rather, the plain language of section 2412(c)(3) confers· and defines our jurisdiction, clearly limiting it to questions concerning the liability which occasioned the sanction at issue, not the sanction itself. The clarity with which Congress has spoken makes it unnecessary to invoke a presumption of reviewability as petitioner urges. Brief for Petitioner at 22. Confined as we are by section 2412(c)(3), we remain free only to remand a decision on sanctions if it must be reconsidered by the Secretary pursuant to a judicial reversal or remand on a question of liability. Because Moller–Butcher does not question his liability for the imposed sanction, we cannot entertain his challenge.

■ We note that the law of the circuit leaves open the possibility of review of claims that the Secretary exceeded her authority in acting under section 2412(c)(1). On · this point, we recently "adhere[d] to the holding in *Dart* that the agency head may not, under section 2412(c)(1), overturn an ALJ's findings of fact and, on that basis, entirely reverse the initial decision, imposing a 'diametrically oppos[ite]' result." *Iran Air v. Kugelman,* 996 F.2d 1253, 1261 (D.C.Cir.1993) (quoting *Dart v. United States,* 848 F.2d· 217, 230 (D.C.Cir. 1988)); [1] *see also Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. ·180, 3 L.Ed.2d 210 (1958) (even

where direct review is foreclosed, federal court had jurisdiction of an original suit to strike down an order of the National Labor Relations Board made in excess of its delegated powers and contrary to a specific prohibition of the NLRA). This case, however, does not present an occasion to revisit the scope of our authority to review claims that the Secretary acted *ultra vires,* because we are convinced in any event that the Under Secretary's action here falls well within her authority under section 2412(c)(1). That section permits the Secretary to "vacate" a decision of the ALJ, and that is precisely what she has done—ordering, in effect, that the original sanction entered against Moller–Butcher be restored. We emphasize that whatever continuing viability *Iran Air* or *Dart* may have, they cannot be read as permitting us to review sanction decisions which are within the Secretary's section 2412(c)(1) authority.

### III. CONCLUSION

For the reasons stated above we lack jurisdiction to consider Moller–Butcher's substantive claims and therefore the petition is dismissed, leaving the Under Secretary's order · undisturbed.

*So Ordered.*

---

**1.** We have not previously considered the effect of section 2412(c)(3) on our review of the Secretary's sanctions decisions. That section had not been enacted when *Dart* was decided. In *Iran Air,* the Government inexplicably did not argue that section 2412(c)(3) precluded our review, and the court did not consider its relevance to the questions presented in that case.