**UNITED STATES of America, Plaintiff,**

v.

**UNION COUNTY 16.29 ACRES OF LAND, More or Less, aka 16.29 Acres of Land, Union County; et al., Defendants.**

No. Civ. 96–1113–JO.

United States District Court,
D. Oregon.

Dec. 10, 1997.

William W. Youngman, Assistant United States Attorney, District of Oregon, United States Attorney's Office, Portland, OR, for plaintiff.

Steven J. Joseph, Carey Joseph Mendiguren, La Grande, OR, Henry C. Lorenzen, Corey Byler Rew Lorenzen & Hojem, Pendleton, OR, Gregory J. Buehne, Spokane, WA, Russell B. West, Union County District Attorney, LaGrande, OR, for defendants.

### OPINION AND ORDER

ROBERT E. JONES, District Judge.

This is a condemnation action. On August 9, 1996, the United States, for the Federal Highway Administration, filed suit seeking to condemn 16.29 acres of land in Union County, Oregon. William and Donna Tsiatsos own the land in question, which the government will use for environmental mitigation—specifically, for riprap and gravel along the Grande Ronde River and for wetlands mitigation—as Oregon Forest Highway Route 154 is expanded and upgraded.

After several months and, apparently, extensive settlement negotiations, the Tsiatsoses answered the condemnation complaint on July 9, 1997. They claim fee simple ownership of the land and admit that $26,000 would be just compensation if the government has power of eminent domain. However, they deny that the government has such power in this situation and assert as an affirmative defense that: Union County owns the road and the United States would be taking the land for the county, the State of Oregon has not concurred in the taking, as 23 U.S.C. § 204(a) requires; and the United States has

no authority to take this land for wetlands mitigation.

This case is now before me on plaintiff's motion (# 30) to strike defendants' affirmative defense, or, in the alternative, for partial summary judgment. For the reasons discussed below, I GRANT plaintiff's motion and hold that the United States has authority to condemn the land in question.

### FACTS

On January 8, 1993, the Federal Highway Administration (FHWA) awarded a construction contract to upgrade 4.2 miles of Route 154. This project required the filling of 18 protected wetlands sites totaling 1.89 acres. In order to complete the project, therefore, the FHWA obtained a permit pursuant to section 404 of the Clean Water Act from the Army Corps of Engineers (a "dredge and fill" permit), and a removal/fill permit from the Oregon Division of State Lands (DSL).

Route 154 traverses the Grande Ronde River corridor. Snake River spring/summer chinook salmon, endangered species that the National Marine Fisheries Service (NMFS) listed for protection under the federal Endangered Species Act, migrate through the Grande Ronde River where the construction project is located. As a result, the ESA required the FHWA to engage in informal consultation with NMFS regarding the project. In response to public notice of the proposed issuance of the section 404 permit, NMFS originally objected to that permit because the mitigation that the FHWA proposed—one acre of off-site wetlands mitigation plus 0.89 acres adjacent to the river for wetlands—was insufficient. However, NMFS concurred with section 404 permit approval so long as appropriate wetlands mitigation was provided. It later found that if the FHWA created or enhanced 0.89 acres of wetlands and fenced 14 acres to prevent cattle grazing, the Route 154 project was not likely to adversely affect the endangered chinook salmon.

To mitigate damage to both the wetlands and the listed salmon, the FHWA agreed to establish 0.89 acres of replacement wetlands and to acquire 14 acres of riparian land along the Grande Ronde River, to be fenced to

exclude cattle. It identified a section of defendants' 1,282–acre cattle ranch as the parcel most suitable for mitigation. Moreover, the proximity of defendants' land to the Wallowa–Whitman National Forest allows for efficient federal management of the acquired land and mitigates part of the environmental harm from cattle use. After a formal survey and after 0.55 acres was omitted for cattle passage, the land chosen was found to total 16.29 acres.

Route 154 is under the jurisdiction of Union County, Oregon, and it was the county that acquired vested title to all other interests in land for construction of that highway. Nevertheless, title to the condemned lands will not be transferred to Union County; instead, title will remain in the United States and the property will be transferred to the Wallowa–Whitman National Forest.

The FHWA requested Union County's assistance in acquiring the defendants' lands, but Union County did not agree with the request and would not help. Moreover, Union County indicated to the FHWA that it was unwilling to accept title to the lands that are the subject of this condemnation proceeding. The FHWA has never sought from Union County, nor has Union County ever granted, consent or concurrence in the selection or planning of the acquisition of defendants' property for wetland mitigation in connection with the Route 154 project.

## DISCUSSION

Plaintiff's motion for summary judgment concerns defendants' defense that the federal government, acting through the FHWA, does not have authority to condemn 16.29 acres for wetlands mitigation for a project that Union County controls, especially when the relevant permits only require 14 acres of wetlands mitigation.

### A. The Act Implicitly Bestows Condemnation Authority on the Agency

The FHWA claims power to condemn this property through general condemnation procedures, 40 U.S.C. §§ 257 and 258a, and based on the authority of the Federal Aid to Highways Act, 23 U.S.C. § 204. When an agency of the United States is "authorized to procure real estate for the erection of a public building or for other public uses," that agency can bring a condemnation action in court. 40 U.S.C. § 257. Alternatively, a federal agency can exercise its power of eminent domain by filing a declaration of condemnation and depositing into federal court an amount equal to the estimated value of the condemned land. 40 U.S.C. § 258a. The declaration of taking must contain:

(1) A statement of the authority under which and the public use for which said lands are taken.

(2) A description of the lands taken sufficient for identification thereof.

(3) A statement of the estate or interest in said lands taken for such public use.

(4) A plan showing the lands taken.

(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

40 U.S.C. § 258a. Finally, "the United States is capable of acquiring privately owned land summarily, by physically entering into possession and ousting the owner." *Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 104 S.Ct. 2187, 2191, 81 L.Ed.2d 1 (1984).

The dispute here is whether the Federal Aid to Highways Act provides the FHWA with the requisite authority to condemn defendants' lands. As the U.S. Supreme Court has noted, condemnation authorization for purposes of 40 U.S.C. § 257 "generally is derived from some independent statute that vests the officer with the power of eminent domain but does not prescribe the manner in which that power should be exercised." *Kirby Forest Indus., Inc. v. United States,* 104 S.Ct. at 2190 n. 1. Here, the Act created the Federal Lands Highways Program and provides that the Secretary of Transportation, "in cooperation with the Secretary of the Interior and the Secretary of Agriculture, shall develop appropriate transportation planning procedures and safety, bridge, and pavement management systems for roads funded under the Federal Lands Highway Program." 23 U.S.C. § 204(a). The Act makes funds available for "public lands highways, park roads, parkways, and Indian res-

ervation roads," *id.,* and "[f]unds available for each class of Federal lands highways shall be available for *any kind* of transportation project eligible for assistance under this title that is within *or adjacent to* or provides access to the areas served by the particular class of Federal lands highways." 23 U.S.C. § 204(b) (emphasis added).

Section 204 does not explicitly give any federal agency condemnation authority. In addition, no federal court has ever interpreted this statute for any purpose. Nevertheless, the statute's text and plain meaning implicitly give the FHWA condemnation authority for the acreage at issue here.

A "project," as used in the Federal Aid to Highways Act, is "an undertaking to construct a particular portion of a highway ***." 23 U.S.C. § 101(a). "Construction," in turn, is "the supervising, inspecting, actual building, *and all expenses incidental to* the construction *or reconstruction* of a highway," including but not limited to restoration and rehabilitation, acquisition of rights of way, acquisition of replacement housing sites, and acquisition of replacement housing. 23 U.S.C. § 101(a) (emphasis added). Moreover, the Federal Lands Highways Program explicitly includes "[a]cquisition of necessary scenic easements and scenic or historic sites" as proper subjects of expenditure. 23 U.S.C. § 204(h).

The Act thus explicitly contemplates that federal agencies will use funds available under the Act both to acquire additional property and property rights and to rehabilitate and restore the lands disturbed in highway construction. As such, the Act implicitly authorizes the Secretary of Transportation to condemn lands. This implicit authority, moreover, is broader than the list of specifics Congress provided. For example, the fact that the Secretary of Transportation has explicit authority to acquire replacement housing sites and replacement housing strongly implies that it has the right to take the private housing properties that it would be replacing.

Therefore, the Act's own text provides authority for the exercise of the federal government's eminent domain power, and it is a reasonable interpretation of the Act that this power can extend to lands necessary for restoration and rehabilitation, two activities related to road construction that the Act explicitly contemplates. Two other facets of interpretation support this conclusion. First, the Ninth Circuit construes federal condemnation power liberally " 'to effectuate the promotion of constitutional federal projects.' " *United States v. 1.33 Acres, Situated in the County of San Luis Obispo,* 9 F.3d 70, 72 (9th Cir.1993) (quoting *United States v. Kennedy,* 278 F.2d 121, 126 n. 17 (9th Cir. 1960)). Second, the FHWA has assumed, in its rulemaking to implement the Act, that it had the power of eminent domain. Thus, "[f]ederal funds may participate in payments made by the SHD for real property or interests therein acquired in accordance with applicable State and Federal law and FHWA directives." 23 C.F.R. § 710.304(a). Moreover, "[f]ederal funds may participate in any expenditure of a type normal to the operation of the SHD and incidental to the acquisition of rights-of-way, whether the acquisition is by negotiation or condemnation." *Id.* § 710.304(b). Because the FHWA has formally interpreted the Act as conferring condemnation authority and that interpretation is reasonable, this court should defer to the agency's interpretation.

## B. Wetlands Mitigation Is a Public Use

■ Wetlands mitigation is a proper public use. As the U.S. Supreme Court recently observed, "the public use requirement of the Takings Clause is coterminus with the regulatory power, and *** the Court will not strike down a condemnation on the basis that it lacks a public use so long as the taking 'is rationally related to a conceivable public purpose.' " *National R.R. Passenger Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 112 S.Ct. 1394, 1404, 118 L.Ed.2d 52 (1992) (quoting *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 240–41, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)).

As noted above, the Act specifically contemplates that funds will be used to restore and rehabilitate lands disturbed during highway construction. Moreover, other federal laws—namely, the Clean Water Act and the Endangered Species Act—necessitate the

wetlands mitigation that the FHWA seeks to undertake here. The U.S. Supreme Court has upheld the condemnation of wetlands for environmental purposes under the Migratory Bird Conservation Act, indicating that both it and Congress recognize such condemnations as serving a public purpose. *North Dakota v. United States*, 460 U.S. 300, 103 S.Ct. 1095, 1101, 75 L.Ed.2d 77 (1983). Finally, President Jimmy Carter issued an Executive Order in 1977 requiring that each federal agency

> shall provide leadership and shall take action to minimize the destruction, loss, or degradation of wetlands, and to preserve and enhance the natural and beneficial values of wetlands in carrying out the agency's responsibilities for (1) acquiring, managing, and disposing of Federal lands and facilities; and (2) providing Federally undertaken, financed, or assisted construction and improvements; and (3) conducting Federal activities and programs affecting land use, including but not limited to water and related land resources planning, regulating, and licensing activities.

Executive Order No. 11990, 42 Fed.Reg. 26961, 26961 (May 24, 1991). The FHWA has incorporated this Executive Order's requirements into its regulations implementing the Federal Aid to Highways Act. 23 C.F.R. § 777.3. Therefore, the condemnation of wetlands to fulfill the environmental law requirements of a federal highway project is "rationally related to a conceivable public purpose"—protecting endangered species and preventing further degradation of the river bank wetlands—and qualifies as a public use for Fifth Amendment purposes.

## C. The State Has Concurred in the Project, and County Approval of the Wetlands Mitigation Is Not Required

■ Under the Federal Aid to Highways Act, "no public lands highway project may be undertaken in any State pursuant to this section unless the State concurs in the selection and planning of the project." 23 U.S.C. § 204(a). The parties vigorously dispute whether the necessary concurrences have occurred in this case and, specifically, whether the county must concur in the particular wetlands mitigation plan that the FHWA seeks to implement.

The U.S. Supreme Court has upheld similar state consent provisions in the Migratory Bird Conservation Act, which requires gubernatorial consent to federal condemnation of wetlands. *North Dakota v. United States*, 103 S.Ct. at 1101. However, the state in that case could not revoke its consent once given. *Id.* at 1103.

Here, a "State" under the Federal Aid to Highways Act is "any one of the fifty states, the District of Columbia, or Puerto Rico." 23 U.S.C. § 101(a). Therefore, as far as statutory consent is concerned, Union County is not a "state," and thus its consent would seem to be irrelevant. The State of Oregon, by contrast—which *does* fit the Act's definition—has twice, through its Department of State Lands, approved state fill and removal permits for the construction project, issued to the FHWA. Both permits, moreover, are "conditional upon establishment of replacement wetlands of approximately 0.89 acres to be created on State land and enhancement of 14 acres [through fencing to stop grazing] of which 6 acres are existing wetlands for loss of 1.89 acres of wetland habitat." Therefore, the State of Oregon has approved the Route 154 highway project with full knowledge that wetlands mitigation would be necessary and, in fact, has required such mitigation under its own state laws.

However, federal regulations complicate the issue of consent for counties. Under these regulations, "a statewide FH [forest highway] agreement shall be executed among the FHWA, the FS [Forest Service], and each SHA [State Highway Authority]." 23 C.F.R. § 660.111(a). All parties to this case admit that the appropriate agencies have entered into this statewide agreement.

In addition, under certain circumstances the FHWA must enter into project agreements with local governments. Thus:

> A project agreement shall be entered into between the FHWA and the cooperator involved under one or more of the following conditions:

(1) A cooperator's finds are to be made available for the project or any portion of the project;

(2) Federal funds are to be made available to a cooperator for any work;

(3) Special circumstances exist which make a project agreement necessary for payment purposes or to clarify any aspect of the project; or

(4) It is necessary to document jurisdiction and maintenance responsibility.

23 C.F.R. § 660.111(c).

A "cooperator," for purposes of these regulations, is "a non-Federal public authority which has jurisdiction and maintenance responsibility for a FH." 23 C.F.R. § 660.103. This court accepts, therefore, that Union County is a "cooperator" for the highway in question. Nevertheless, the FHWA represents, and defendants do not contest, that none of the four conditions requiring a project agreement has been met. Therefore, no project agreement with Union County was required for the wetlands mitigation at issue here.

Finally, defendants point out that "[n]o construction shall be undertaken on any FH project until plans, specifications, and estimates have been concurred in by the cooperator(s) and the FS, and approved in accordance with procedures contained in the statewide FH agreement," 23 C.F.R. § 660.113(a), and argues that Union County never agreed to this particular wetlands mitigation plan. Nevertheless, according to the government's uncontradicted testimony, Union County concurred in the original plans, specifications, and estimates for this project, the permitting process occurred that required the mitigation at issue, the road was built, and the county took some right-of-way. As such, the county concurred in the general road project, participated in the planning, was aware of the permitting process and requirements, and has taken some ownership in the final result. Defendants, therefore, cannot rely on lack of county concurrence for

a road that has already been constructed to dictate how the FHWA may or may not comply with federal wetlands mitigation requirements.[1]

## D. Title Will Remain in the United States; However, the FHWA Also Has Authority to Condemn Lands for the Benefit of Union County

■ Defendants have stated in their Concise Statement of Facts that title to the land in question here will remain with the U.S. government. However, even if we view the condemnation as being for the benefit of Union County, there is nothing improper in the FHWA's condemnation. The Supreme Court has upheld condemnations when the essential purpose of those condemnations was to transfer ownership of the property from one private party to another. *National R.R. Passenger Corp.*, 112 S.Ct. at 1404; *Hawaii Housing Auth. v. Midkiff*, 467 U.S. at 240–41, 104 S.Ct. 2321; *Berman v. Parker*, 348 U.S. 26, 32–34, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Therefore, there can be no violation of the Fifth Amendment or the federal Administrative Procedures Act when a federal agency condemns land pursuant to a federal statutory highway program, in order to comply with federal environmental laws, and will retain federal title to those lands, even though a county highway will also benefit from the condemnation.

## E. This Court Has No Jurisdiction to Review the Amount of Acreage that the FHWA Condemns

■ In general, once the condemning agency has established that it is condemning land for a public use pursuant to statutory authority, the courts do not second-guess the agency's choice of parcels, nor do they require that the parcel exactly correspond to the contemplated use. In the words of the U.S. Supreme Court:

It is not for the courts to oversee the choice of the boundary line nor to sit in

---

**1.** It may be, as defendants suggest, that Union County has a grievance with the FHWA based on agreements between those two agencies, but defendants lack standing to argue Union County's position. Because the road is built, moreover, federal law compels the FHWA to complete the wetlands mitigation, suggesting that Union County would be estopped from protesting that mitigation in any case.

review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.

*Berman v. Parker,* 348 U.S. 26, 35–36, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *see also United States v. 0.95 Acres of Land,* 994 F.2d 696, 699 (9th Cir.1993) ("A federal court has jurisdiction to review only one aspect of condemnation actions: is the purpose for which the property was taken a Congressionally authorized public use?"); *United States v.. 80.5 Acres of Land,* 448 F.2d 980, 983 (9th Cir. 1971) ("Once an administrative agency designated by Congress has been delegated authority to take lands for a public use, the courts have no jurisdiction to review action of that administrative agency in its determination as to the parcels of land that are or are not necessary to the project."). Therefore, this court has no authority to review the FHWA's decision to condemn 16.29 acres when only 14.89 acres were required for wetlands mitigation. In any case, the difference of 1.4 acres would not be arbitrary and capricious, given the character of the land required and the imprecision of land designation before surveying.

## CONCLUSION

Because the FHWA has authority to condemn the 16.29 acres in question for wetlands mitigation in association with a federal highway project, I grant plaintiff's motion (# 30) to strike or for partial summary judgment. Granting this motion, moreover, eliminates defendants' affirmative defense, and defendants have conceded that $26,000 is reasonable compensation. Therefore, judgement is entered for plaintiff and plaintiff is ordered to pay defendants $26,000 as the fair market value for the condemned land.